UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. WILLIAM D. MOODY,

                Plaintiff,

-against-

TOWN OF GREENBURGH, OFFICER KARL
YUAN AND POLICE OFFICERS JOHN DOES
1-4,

                Defendant(s).
------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

09-Civ-6579 (GAY)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 4/9/12

Plaintiff Dr. William Moody ("plaintiff" or "Moody") brings the instant action against defendants Town of Greenburgh ("Town" or "Greenburgh"), Officer Karl Yuan ("Yuan") and Police Officers John Does 1-4 ("John Does") alleging violations of 42 U.S.C. §§ 1983 ("§ 1983") and 1985 (§ 1985") and New York State law. Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.")[1] For the reasons set forth below, defendants' motion is GRANTED.

## I. BACKGROUND

The following facts are taken from the defendants' Local Rule 56.1 Statement.[2] In the early morning hours of May 11, 2008, Dr. William Moody and a guest, LaKenya Bennett, had an altercation outside his residence that was witnessed by passengers in

---

[1] This action is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636(c).
[2] Pursuant to this Court's rules, the defendants submitted a Rule 56.1 Statement. See Local Civ. R. 56.1(a). In addition, because the plaintiff is now appearing *pro se*, defendants properly notified him of Local Civ. R. 56.1 (b)'s requirement that he submit a responsive statement. See Local Civ. R. 56.1 (b). Since the plaintiff did not file the required statement, the material facts contained in the defendants' statement are to be taken as true. See Local Civ. R. 56.1 (c). Nonetheless, in light of Moody's *pro se* status, the Court has conducted a thorough review of the record so as to ascertain whether it reveals any material, disputed issues of fact and is satisfied that the citations to the record in the defendants' Rule 56.1 Statement support the assertions therein.

Copies mailed / handed / faxed to counsel 4/9/12

a Metro taxicab, which had previously been called to the scene by Bennett. A 911 call was subsequently received by the Elmsford Police Department. The female caller reported that "people are arguing" and "he hit her." The Elmsford Police Department passed the information from the call to the Greenburgh Police Dispatcher because the location of the incident, 4 North High Street, is located within that department's jurisdiction. At approximately 2:00 a.m., four Greenburgh police officers were dispatched to the scene: Karl Yuan, Mark D'Elia, Michael Ryan and Sergeant Gregory Attalienti.[3] Attalienti, as the ranking officer on the scene, was in charge of the investigation.

Upon their arrival, the police interviewed Moody and Bennett separately. Moody was interviewed by Yuan in front of the garage, which was located on the side of the house and around the corner from the front door, such that Moody could not see the front door. Attalienti interviewed Bennett on the steps/landing area in front of the door. Prior to interviewing Bennett, Attalienti observed signs of a physical struggle at the scene: hair extensions and the contents of a purse strewn on the ground. Pedigree information was run on Moody and Bennett, which came back negative. After determining that Moody and Bennett were not in a domestic relationship and that the dispute they had had was about money, Attalienti concluded that no crime had been committed and there was no basis to arrest anyone. Bennett told Attalienti that she wanted to go home, but had no money to do so. Attalienti then approached Moody, who was standing with Yuan, and asked him to provide cab fare home for Bennett.

---

[3] Four officers were sent because the Greenburgh dispatcher, hearing that the 911 caller sounded like a young woman, believed there was a possible domestic violence incident involving a minor. (See Gelardi Aff., attached to Affirmation of Richard L. Marasse.)

2

After waiting thirty minutes for a cab to arrive, Attalienti directed D'Elia and another officer to transport Bennett to a nearby gas station where she could wait for a cab. Bennett was dropped off at 2:56 a.m.

Plaintiff instituted this action on July 23, 2009 based on claims for 1) excessive use of force; 2) false arrest; 3) false imprisonment; 4) malicious prosecution; 5) municipal violations; and 6) conspiracy. He also makes a separate New York state law claim for punitive damages for actions that were "shocking to the conscience in their purposeful and intentional violation of the defendants' duty of care."[4]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

---

[4] Plaintiff was represented by counsel until March 25, 2011.

3

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). Summary judgment must be denied if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). However, the non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts." Borthwick v. First Georgetown Securities, Inc., 892 F.2d 178, 181 (2d Cir.1989). Thus, if the evidence favoring the non-moving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).

### III. "JOHN DOE" DEFENDANTS

Defendants first move for summary judgment as to all claims against defendants "Police Officers John Does 1-4."[5] They point out that despite the fact that Moody has known the identities of the three other officers since May 5, 2010 when he received defendants' Fed. R. Civ. P. 26 (a) disclosures, he has not yet served those officers. In fact, defendants note, Moody names the officers for the first time in his response to this motion. Discovery has been completed long ago in this matter. As defendant failed to serve said officers notwithstanding his knowledge of their identities, all "John Doe"

---

[5] Plaintiff initially believed there were a total of five officers at the scene; it is now undisputed that there were a total of four.

4

defendants must be dismissed. See Bowen v. County of Westchester, 706 F.Supp.2d 475, 493-94 (S.D.N.Y. 2010) (citing cases).

Furthermore, the statute of limitations on claims asserted under § 1983 which accrue in New York is three years. Jaghory v. N.Y.S. Dep't of Educ., 131 F.3d 326, 331 (2d Cir. 1997). The events underlying this action occurred on May 11, 2008. Therefore, plaintiff's claims against defendants John Does 1-4 would now be untimely. See Aslandis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir.1993) ("It is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.").

## IV. SECTION 1983 AND NEW YORK STATE LAW CLAIMS

### A. False Arrest and False Imprisonment[6]

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Under New York law, in order to state a claim for false arrest, the plaintiff must demonstrate that the defendant (1) intended to confine the plaintiff, (2) that the plaintiff was conscious of the confinement, (3) that the plaintiff did not consent to the confinement, and (4) that the

---

[6] A claim for false arrest is a type of claim for false imprisonment, Weyant v. Okst, 101 F.3d 845, 853 (2d Cir.1996), and will therefore be treated as a single claim. See Phelps v. City of New York, No. 04 Civ. 8570, 2006 WL 1749528, at *2 n.2 (S.D.N.Y. June 27, 2006).

confinement was not otherwise privileged. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir.2003).

Confinement based on probable cause is privileged. Chevalier v. City of New York, No. 11 Civ. 1511, 2011 WL 4831197, at * 2 (S.D.N.Y. Oct. 12, 2011). Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.2d 625, 634 (2d Cir. 2000) (citation omitted). Probable cause is not required, however, to justify a brief, investigatory detention. "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." Floyd v. City of New York, 813 F.Supp.2d 457, 465-66 (S.D.N.Y. 2011). See also Terry v. Ohio, 392 U.S. 1 (1968). The level of suspicion required for a so-called Terry stop "is considerably less than proof of wrongdoing by a preponderance of the evidence . . . [and] is obviously less demanding than that for probable cause . . . ." United States v. Sokolow, 490 U.S. 1, 7 (1989) (citations omitted).

An "investigative stop that exceeds [the] time required to confirm or dispel suspicion with reasonable diligence becomes [a] *de facto* arrest" and such "continued detention without probable cause violate[s] the Fourth Amendment." Gilles v. Repicky, 511 F.3d 239, 246 (2d Cir. 2007).

Plaintiff's false arrest and false imprisonment claims stem from the period of time, approximately thirty minutes, that he was kept from entering his home after the police

6

arrived to investigate the 911 call. (See Moody Dep. 10:17-19.) During his deposition, plaintiff stated,

> The police officer [Yuan] put his hand on his gun, told me to stand right there; don't move, would not allow me to enter my home, would not allow me to exit my property. And any time I moved, he told me, stand there. Don't move, with his hand on his gun. And giving me very mean, stern looks every time I moved, with his hand on his gun." (Moody Dep. 10:1-7, attached as Ex. I to Affirmation of Richard L. Marasse.)

Yuan, however, was merely following police protocol. The Greenburgh Police Operations Manual directs police officers responding to a domestic dispute to "[r]estore order by gaining control of the situation and separating the parties involved;" to "[i]nterview all available parties and witnesses, separately if practical;" and to "[d]etermine whether the involved parties are in a Domestic Relationship." (Greenburgh Police Procedure No. 430.01, ¶¶ 2(B)(1, 5, 6), attached as Ex. H to Affirmation of Richard L. Marasse.) It cannot be said that Yuan, relying on the information from the 911 call that "he hit her" and his own observations of a struggle, acted unreasonably by detaining Moody during the questioning and investigation of this matter. On this record, the police had reasonable suspicion supported by articulable facts to detain him. Moreover, under the circumstances, the detaining of the plaintiff was reasonable and did not result in a *de facto* arrest. Summary judgment is thus granted on this claim under §1983 and New York State law.

### B. Malicious Prosecution

"To prevail on a malicious prosecution claim under § 1983, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a state law malicious prosecution claim." Espada v. Schneider, 522 F.Supp.2d 544, 552

(S.D.N.Y. 2007) (citation omitted). Under New York law, a plaintiff must show: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Id. (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). Criminal proceedings are not commenced for the purposes of a malicious prosecution action until process is issued to bring the accused before a judicial officer, the accused is arrested, or an indictment is returned or an information is filed. See Restatement (Second) of Torts § 654.

Here, no criminal proceeding was commenced against Moody. As a matter of law, therefore, summary judgment is granted to defendants with respect to plaintiff's § 1983 and New York State law malicious prosecution claims.

## V. SECTION 1983 CLAIMS

### A. Excessive Use of Force

The Fourth Amendment prohibits the use of excessive force by a police officer "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." See Graham v. Connor, 490 U.S. 386, 395 (1989). The test for excessive force is one of reasonableness. Id. "[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir.2010) (citation omitted). The Court must evaluate the record "from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. There are also situations in

which the alleged unconstitutional act and injury are so de minimis that they cannot rise to the level of a constitutional violation as a matter of law. See Hodge v. Village of Southampton, No. 09 Civ. 2606, 2012 WL 174838, at *5 (E.D.N.Y. 2012) (collecting cases). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. 396 (internal quotation marks and citation omitted).

In his unsworn response to this motion, plaintiff claims that while he was being separately interviewed, he attempted to "look around the corner when then Yuan pushed me back[,] grabbed his gun with his finger on the trigger and lifted it from its' [sic] seated position in the holster . . . ." (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 2.) Even if the Court considers plaintiff's unsworn statement, he has failed to demonstrate that, even if true, such action was anything more than de minimis. In all cases, "a de minimis use of force will rarely suffice to state a constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). Moreover, "it is clear that some type of injury is required to prevail on a § 1983 excessive force claim." Wims v. New York City, No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011) (citation omitted). Given the absence of proof establishing a "genuine issue of material fact," the Court concludes that no reasonable trier of fact could find that Yuan's conduct constituted excessive force or was objectively unreasonable. See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007) ("[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

9

verdict for the [non-movant] on the evidence presented . . . .") (citation omitted). Accordingly, summary judgment is granted on this claim.

### B. Municipal Liability

To establish a municipal liability claim under § 1983, the plaintiff must show that his constitutional rights were violated as the result of a policy, custom or practice of the municipality. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). "The policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation." Sorlucco v. New York City Police Dep't., 971 F.2d 864, 870 (2d Cir. 1992). An unconstitutional practice that is so persistent and widespread, even without formal approval through the body's official decision making channels can constitute "custom or usage" and create municipal liability. See id. However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 at 694.

Moody's § 1983 claim against Greenburgh is premised on the theory that the Town has permitted "a pattern and practice of improper beatings and abuses of civilian persons[]" and "has failed to maintain a proper system for investigation of all incidents of unjustified beatings and excessive use of force by police officers." (See Compl. ¶ 49.) As a direct and proximate result, he states, he was falsely arrested, "deprived of his freedom psychologically" and "mentally and physically harmed, to the extent of which he suffered from various injuries that required medical attention." (Id. ¶ 55.)

Moody has failed to produce an iota of evidence establishing any of his claims. "The mere assertion . . . that a municipality has . . . a custom or policy is insufficient in

the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). Summary judgment is thus granted on this claim.

## VI. SECTION 1985 CONSPIRACY

To recover on a § 1985 conspiracy claim, the plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Cine SK8, Inc., 507 F.3d at 791. Further, there must also be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. (citation omitted).

The general allegations in plaintiff's complaint, without any factual support, fail to demonstrate the existence of a conspiracy or any acts in furtherance of a conspiracy. Moreover, plaintiff does not allege that he is a member of a protected class. This claim is dismissed.

## VII. PUNITIVE DAMAGES

Under New York law, there is no independent cause of action for punitive damages. Nwachukwu v. Chemical Bank, No. 96 CIV. 5118, 1997 WL 441941, at *8 n.7 (S.D.N.Y. Aug. 6, 1997). Such a claim is merely an element of total damages claimed on underlying cause of action. See Smith v. County of Erie, 743 N.Y.S.2d 649 (4th Dep't 2002); Pileckas v. Trzaskos, 126 511 N.Y.S.2d 438 (3d Dep't 1987); Probst v.

Cacoulidis, 743 N.Y.S.2d 509 (2d Dep't 2002); Green v. Fischbein Olivieri Rozenholc & Badillo, 507 N.Y.S.2d 148 (1st Dep't 1986). Since plaintiff has failed to establish a viable state law claim, there can be no claim for punitive damages. Accordingly, this claim is dismissed.

### VIII. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

The Clerk of the Court is respectfully requested to terminate the pending motion (Docket # 22).

Dated: April 9, 2012
White Plains, New York

SO ORDERED:

_____
GEORGE A. YANTHIS, U.S.M.J.

12